## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:21-cr-8 (VAB) |
| TREVON WRIGHT. | |

## RULING AND ORDER ON MOTION FOR RECONSIDERATION AND SECOND MOTION FOR A NEW TRIAL

A jury found Trevon Wright ("Defendant") guilty of a single-count Second Superseding Indictment of racketeering conspiracy for crimes related to the possession and distribution of narcotics, robberies, and acts of violence, including assault and murder. *See* Second Superseding Indictment, ECF No. 412 (Sept. 7, 2023) ("Second Superseding Indictment"); Jury Verdict, ECF No. 574 (Dec. 5, 2023).

Mr. Wright has filed a motion for reconsideration of the Court's denial of his first motion for a new trial and has filed a second motion for a new trial. Mot. for Reconsideration, ECF No. 681 (Dec. 3, 2024) ("Mot. for Reconsideration"); Second Mot. for a New Trial, ECF No. 684 (Dec. 9, 2024) ("Second Mot. for New Trial").

For the following reasons, Mr. Wright's motion for reconsideration and his motion for a new trial are **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of this case. *See* Order, ECF No. 674 at 2–6 (Nov. 8, 2024) ("Order re New Trial").

On January 16, 2024, Mr. Wright filed a motion for a new trial, arguing that (1) time stamps from the day of the murder show that he was not present at the drive-by shooting of Myreke Kenion, (2) he was entitled to individual *voir dire* of prospective jurors, and (3) he was prejudiced by spillover evidence from other Defendants unrelated to him. *See* Mot. for a New Trial, ECF No. 592 (Jan. 16, 2024) ("First Mot. for New Trial").

Mr. Wright also raised two additional arguments for the first time in his reply brief, which the Court considered: that (1) the failure to include an alibi instruction and (2) the Government's misstatement of fact entitled him to a new trial. *See* Reply, ECF No. 628 (Feb. 22, 2024) ("Reply Brief").

On November 13, 2024, the Court denied Mr. Wright's motion for a new trial. *See* Order re New Trial.

On December 3, 2024, Mr. Wright filed a motion for reconsideration of the Court's Order denying his motion for a new trial. Mot. for Reconsideration.[1]

On December 6, 2024, the Government filed a memorandum in opposition to Mr. Wright's motion to reconsider. Mem. in Opp'n, ECF No. 683 (Dec. 6, 2024) ("Gov't Opp'n").

On December 9, 2024, Mr. Wright filed a second motion for a new trial, arguing that the Government offered false testimony at his trial. Second Mot. for a New Trial.

## II.    STANDARD OF REVIEW

### A.  Motion for Reconsideration

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the

---

[1] Because Mr. Wright moved for an extension of time until December 4, 2024 to file a motion for reconsideration, *see* Order, ECF No. 680, his motion for reconsideration was timely filed.

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (internal citations omitted)). "[A] motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

### B.  Motion for a New Trial

Federal Rule of Criminal Procedure 33 allows the court to "grant a new trial to [a] defendant if the interests of justice so require." Fed. R. Crim. P. 33. Under Rule 33, the trial court has "broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). In deciding such a motion, courts may weigh the evidence and the credibility of witnesses but cannot "wholly usurp" the role of the jury. *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000). Accordingly, the power to set aside a jury verdict "should be used 'sparingly' and only 'in the most extraordinary circumstances.'" *United States v. Zayac*, No. 3:09-cr-00136 (JCH), 2011 WL 5238823, at *2 (D. Conn. Nov. 1, 2011) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).

The court also "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Ferguson*, 246 F.3d at 134. "The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice." *Id.* To grant the motion, "[t]here must be a real concern that an innocent person may have been convicted." *Id.* (internal quotation marks omitted).

### III.    DISCUSSION

#### A.  Motion for Reconsideration

Mr. Wright asks the Court to reconsider three aspects of its Order denying his motion for a new trial: (1) its determination that the failure to include an alibi jury instruction did not warrant a new trial, (2) its reliance in the Order on testimony from Mr. Dangerfield that Mr. Wright claims was contradicted by a recording played at trial, and (3) its determination that Mr. Wright was not exonerated by timestamp evidence. *See* Mot. for Reconsideration.

In response, the Government claims that Mr. Wright's motion for reconsideration re-raises arguments and "recites evidence that he previously pointed to in his original motion and that the Court has already considered, and indeed rejected, in its November 8, 2024 Order." Gov't Opp'n at 3.

The Court will address each argument in turn.

#### 1.  Alibi Jury Instruction

In his motion for reconsideration, Mr. Wright argues that because he is charged with an "aggravated" RICO conspiracy, the Government had "to prove that Mr. Wright himself intentionally murdered Myreke Kenion, or intentionally aided and abetted the murder – not that he just conspired with others to do so," and thus the failure to include an alibi jury instruction warrants a new trial. Mot. for Reconsideration at 1–2.

In response, the Government argues "[t]hat the penalty for a conviction as to Count One with the special sentencing factor of murder is more severe had no bearing on the Government's burden of proof, which was properly instructed by the Court." Gov't Opp'n at 4. The Government further argues that "there was more than sufficient evidence from Wright's

cellphone and the ballistics evidence as well as his admissions to Dangerfield even without the wire recordings." *Id.* at 6.

The Court agrees.

As a preliminary matter, Mr. Wright fails to point to any controlling law that the Court overlooked to in its prior Order. Moreover, Mr. Wright argues that: "Due to the 'Special Sentencing Factors' the government had to prove that Mr. Wright was at the scene of the crime in the SUV; that with the intent to kill Myreke Kenion, Mr. Wright caused the death of Mr. Kenion or intentionally aided and abetted in the shooting death of Mr. Kenion. To obtain a 60 year maximum sentence, the government had to prove that Mr. Wright himself intentionally murdered Myreke Kenion, or intentionally aided and abetted the murder – not just that he conspired with others to do so." Mot. for Reconsideration at 2.

But the Court instructed the jury that the Government must "prove[] beyond a reasonable doubt that . . . Trevon Wright . . . committed or aided and abetted the alleged murders attributed to [him]." Nov. 30, 2023 Tr. at 143. The Court also instructed the jury to "decide unanimously whether each defendant knowingly and unlawfully committed the murder of the named individual. *Id.* The Court further instructed the jury that "[y]ou may not infer that the defendants committed or, as to Mr. Wright and Mr. Jones, aided and abetted these crimes merely because they associated with other people who had a propensity to commit crimes or merely because you may believe these defendants have a propensity to commit crimes."[2] *Id.* Nothing in Mr. Wright's

---

[2] The full jury instruction is included below:

> If you find any of the defendants, Keishawn Donald, Trevon Wright, Eric Hayes, and Travon Jones guilty of racketeering conspiracy as indicated above, you also need to decide something more specific: Whether the government has proved beyond a reasonable doubt that Keishawn Donald and Eric Hayes committed the murder -- alleged murders attributed to them, and whether Travon Jones -- Trevon Wright and Travon Jones committed or aided and abetted -- committed or aided and abetted the alleged murders attributed to them.

filing—certainly, he has cited to no caselaw in support of his legal position—suggests a legal distinction between Mr. Wright's proffered burden of proof, and the one included in the Court's specific instructions to the jury, much less one requiring this Court's reconsideration of the jury's verdict.

As this Court previously ruled, "the lack of an alibi instruction did not unfairly prejudice Mr. Wright in the jury's determination that, in addition to being guilty of Count One, he had likewise been involved in the murder of Myreke Kenion [, because] . . . there is sufficient evidence for a rational juror to conclude that Mr. Wright was, at least, involved in the murder, discrediting Mr. Wright's alibi defense." Order re New Trial at 58; *see also id*. at 29–31 (discussing evidence of Mr. Wright's involvement in the murder of Myreke Kenion). And the failure of Mr. Wright's counsel to request an alibi jury instruction provided an additional basis for denying his motion for a new trial. *Id*. at 59; *see also United States v. Burse*, 531 F. 2d 1151 (2nd Cir. 1976) ("There have been occasions when the courts have viewed the absence of an alibi instruction as harmless. . . [w]hen such an instruction has not been requested or when the evidence of the defendant's guilt has been overwhelming," though the court did not "comment[] on the propriety of these exceptions[.]").

Accordingly, there is no basis to reconsider the Court's previous Order on these grounds.

---

In answering these questions, you must decide unanimously whether each defendant knowingly and unlawfully committed the murder of the named individual.

You may not infer that the defendants committed or, as to Mr. Wright and Mr. Jones, aided and abetted these crimes merely because they associated with other people who had a propensity to commit crimes or merely because you may believe these defendants have a propensity to commit crimes.

Evidence of mere presence as an inactive companion or passive acquiescence or the doing of innocent acts which, in fact, aid in the commission of a crime, is insufficient to find the defendant guilty as an accessory under the statute.

Nov. 30, 2023 Tr. at 142–44.

### 2. Mr. Dangerfield's Testimony

Mr. Wright also argues that the Court's decision relied upon testimony from Mr. Dangerfield that Mr. Wright argues is proven false by a recording played at trial. Mot. for Reconsideration at 2–4.

The Government, however, argues that "there was more than sufficient evidence from Wright's cellphone and the ballistics evidence as well as his admissions to Dangerfield even without the wire recordings." Gov't Opp'n at 6.

The Court agrees.

At trial, Mr. Dangerfield testified that, while he was wearing a wire, "JD"—Jaheim Warren—told him that Mr. Wright was involved in the murder of Myreke Kenion. Nov. 6, 2023 Tr 61–62 (Q. And with regards to JD [Mr. Warren], what, if anything, did JD admit to you about shooting Myreke Kenion when you were wearing the wire? A. That -- that he did it and he said Tea'ron didn't stop the car for them, . . . him and Tre [Mr. Wright], you know, get out the car to, you know, do what they wanted to do). Mr. Wright argues that this testimony was false, however, because the recording that the Government played of this wiretapped conversation does not include "anything said by JD, or Trevon Wright himself . . . about Trevon Wright's involvement in the Kenion homicide." Mot. for Reconsideration at 2–3. Mr. Wright also points to three instances where the Court's Order relied upon this testimony in finding sufficient evidence to support his conviction. *See* Order re New Trial at 30 ("Mr. Warren also claimed that he and Mr. Wright committed the murder months later while Mr. Dangerfield was wearing a concealed recording device."); *id.* at 58 ("The Government presented a witness who testified that Mr. Wright admitted to the murder, a recording where Mr. Jaheim Warren claimed he committed the murder with Mr. Wright, as well as evidence from Mr. Wright's social media page consistent

with his involvement in the shooting."); *id.* at 62–63 ("Mr. Dangerfield testified that Mr. Wright did, at some point after the murder, tell him that he shot Myreke Kenion along with Mr. Jaheim Warren, and Mr. Warren corroborated this while Mr. Dangerfield was wearing a concealed recording device.").

The fact that the recording did not corroborate Mr. Dangerfield's testimony, however, does not change the Court's analysis. First, as discussed in the Court's opinion, Mr. Wright had the opportunity to discredit Mr. Dangerfield's testimony at trial, and it is the jury's role, not the Court's, to determine his credibility and the weight to give Mr. Dangerfield's testimony. *Ferguson*, 246 F.3d at 133–34 ("Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, '[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'").

Moreover, as discussed in the Court's prior Order, *see* Order re New Trial at 29–31, even without this testimony, "competent, satisfactory and sufficient evidence in the record supports the jury verdict" that Mr. Wright committed, or aided and abetted in, the murder of Myreke Kenion. *Ferguson*, 246 F.3d at 134. For example, in each of the instances where the Court cited Mr. Dangerfield's testimony at issue here, the Court noted other evidence that a reasonable juror could have relied upon to find Mr. Wright was involved in Myreke Kenion's murder. *See* Order re New Trial at 30 ("Mr. Dangerfield testified that Mr. Wright told him that he and Jaheim Warren shot Mr. Kenion, and Taeron Womack was driving."); *id.* at 58 ("The Government presented a witness who testified that Mr. Wright admitted to the murder, . . ., as well as evidence from Mr. Wright's social media page consistent with his involvement in the shooting."); *id.* at 63 ("Moreover, the jury heard other evidence that Mr. Wright's social media

posts on January 26, 2020 suggest his involvement in the murder; so, any misstatement regarding the timing of Mr. Wright's admission to Mr. Dangerfield was not unduly prejudicial.").

Accordingly, there is no basis to reconsider the Court's previous Order on these grounds.

### 3. Timestamp Evidence

Finally, Mr. Wright argues that the Court misconstrued testimony offered at trial in dismissing his timestamp evidence argument. Mot. for Reconsideration at 4–5. Mr. Wright argues that "[i]t was physically impossible for Mr. Wright to have been in the SUV going through the intersection of Stratford Avenue and Davenport Street at 5:45:09 and retrieve his cell phone from 27 Cowles Street and unlock it by 5:45:33 based upon the sworn testimony of government's witnesses Detective Heanue and Officer Santoro." *Id.* at 5.

Mr. Wright points out that, while the Court cited to Detective Jason Ferri's testimony to conclude that "[e]vidence at trial suggested that the timestamp from videos used in surveillance video from the City of Bridgeport may not always correspond to the timestamp from iPhone data," *see* Order re New Trial at 31 (citing Nov. 2, 2023 Tr. at 147 ("Q: Are videos generally in the correct time? A: Usually not.")), Detective Ferri's testimony did not opine on the accuracy of the City of Bridgeport Fusion Center's pole cameras, but rather opined on the accuracy of "private DVR's he encountered as part of the DVRT team of the Bridgeport Police." Mot. for Reconsideration at 4.

In response, the Government claims that Mr. Wright presented this argument to the jury and in his initial motion for a new trial, and was rejected, and that "notwithstanding any potential timing errors with respect to the Fusion Center cameras, as the Court found in its Order, there was 'sufficient evidence for a rational juror to find beyond a reasonable doubt that Wright was present at the time of the [Kenion] shooting.'" Gov't Opp'n at 6.

The Court agrees.

A reasonable jury could infer from Detective Ferri's testimony that timestamps from video surveillance videos are not always accurate, and thus the jury's credibility assessment in weighing the conflicting testimony is not so "patently incredible or def[ying of] physical realities," as to warrant a new trial. *Ferguson*, 246 F.3d at 134. Moreover, as discussed in the Court's previous Order, multiple other sources of evidence connected Mr. Wright with the Myreke Kenion murder, such as his social media search of Mr. Kenion's Facebook profile minutes after the murder and Mr. Dangerfield's testimony that Mr. Wright admitted to the murder. *See* Order re New Trial at 29–31.

Accordingly, Mr. Wright has failed to "point to controlling decisions or data that the court overlooked. . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257, and his motion for reconsideration is denied.

## B. Motion for a New Trial

"To pursue relief from conviction based on claimed perjury, [a Defendant] must make a threshold showing that each of these witnesses in fact willfully testified falsely and that the falsehoods were not known to him at the time of trial." *United States v. Aquart*, 912 F.3d 1, 20 (2d Cir. 2018) (citing *United States v. Stewart*, 433 F.3d 273, 297 (2d Cir. 2006); *and United States v. Monteleone,* 257 F.3d 210, 219 (2d Cir. 2001)). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *Monteleone*, 257 F.3d at 219. "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Id.*

"Once this threshold demonstration of perjury has been met, however, a new trial is not foreordained." *Id.* In order to "strike a fair balance between the need for both integrity and finality in criminal prosecutions," *Stewart*, 433 F.3d at 297, "the court must assess the materiality of the false statements, applying one of two standards depending on the prosecution's awareness of the falsehoods at the time of trial." *Aquart*, 912 F.3d at 20. "If the prosecution knew, or should have known, of the false testimony prior to the conclusion of trial, the conviction must be set aside if there is 'any reasonable likelihood' that the testimony could have affected the jury's judgment." *Id.* (quoting *United States v. Cromitie*, 727 F.3d 194, 221–22 (2d Cir. 2013)). "If the government was unaware of the falsity at the time of trial, a new trial is warranted if the court is left with the 'firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'" *Id.* (quoting *Stewart*, 433 F.3d at 297).

Mr. Wright argues that he is entitled to a new trial because the government's cooperating witness, Mr. Dangerfield, offered allegedly false testimony that he alleges the government knew to be false and did not correct. *See* Second Mot. for New Trial at 2–3 (citing *United States v. Wallach*, 935 F. 2d 445 (2nd Cir. 1991) ("If it is established that the government knowingly permitted the introduction of false testimony reversal is 'virtually automatic.'")). In particular, he argues that Mr. Dangerfield gave false testimony when he stated—as discussed above—that while he was wearing a wire, Mr. Warren told him that Mr. Wright and Mr. Warren aided in the murder of Myreke Kenion. Second Mot. for New Trial at 1–2. Mr. Wright argues that this testimony is false, because it is directly contradicted by the recording of the wiretapped conversation that does not mention Mr. Wright.[3] Second Mot. for New Trial at 2.

---

[3] Mr. Wright's counsel was present during Mr. Dangerfield's testimony and did not object to the testimony at the time, nor did Mr. Wright include this argument in his first motion for a new trial. Mr. Wright's counsel argues that he "did not hear/ and/or does not recall the above testimony by Kyran Dangerfield immediately before Gvt. Exhibit

The Court disagrees.

As a threshold matter, Mr. Wright has failed to show that Mr. Dangerfield had the "willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *Monteleone*, 257 F.3d at 219. Mr. Wright argues that the wiretap recording does not support Mr. Dangerfield's statement that, while Mr. Dangerfield was wearing a wire, Mr. Warren informed him that "Tea'ron didn't stop the car . . . to let him -- him [Mr. Warren] and Tre [Mr. Wright], you know, get out the car to, you know, do what they wanted to do" because the recording does not mention Mr. Wright by name. Nov. 6, 2023 Tr. at 61.

While Mr. Dangerfield's recollection may not be a word-for-word recitation of the recording, key portions of Mr. Dangerfield's testimony are consistent with other evidence presented at trial. For example, Mr. Dangerfield testified that Mr. Wright himself admitted "[t]hat him and JD [Mr. Warren] was the shooters" and "said that Tae'ron was driving." *Id.* at 57–58. In addition, in response to the Government's questions about the wiretap recording, Mr. Dangerfield testified that Mr. Warren can be heard speaking about how "shots started hitting the floor because they were driving too fast." *See* Nov. 6, 2023 Tr. at 63 ("Q. So can just tell the jury what you are talking about here? A. Talking about the Myreke Kenion murder. Q. And what is JD saying to you about the speed of the car? A. That he was driving 30 miles per hour when they

---

1149 was played for the jury," and "[t]he first time the undersigned became aware of this specific statement by Kyran Dangerfield to the jury was while reading the Court's decision dated November 8, 2024." Second Mot. for New Trial at 1 n.1. While Mr. Wright is likely time-barred from bringing a second motion for a new trial asserting this argument, given the severity of the charges against Mr. Wright, the Court will consider the merits of Mr. Wright's second motion for a new trial. *See United States v. Canova*, 412 F.3d 331, 345 (2d Cir. 2005) ("[Rule 33's] time limits were expressly 'framed to resist ad hoc relaxation' and, thus, may fairly be characterized as 'rigid.'"); *but see United States v. Hall*, No. 19CR130 (DLC), 2020 WL 729776, at *1 (S.D.N.Y. Feb. 13, 2020) ("[D]efendant's Rule 33 motion is untimely. The Court nonetheless reaches the merits of that motion, as doing so does not change the result.")

got next to him. Q. And then does he describe what happened when he shot him? A. Yeah, he said, you know, shots started hitting the floor because they were driving too fast.").

Mr. Dangerfield's testimony regarding his recorded conversation with Mr. Warren—testimony given before the recording was played—may be an inaccurate recollection of the conversation, but Mr. Wright has failed to show that his testimony was perjured.[4] *See United States v. Rainford*, 110 F.4th 455, 470 (2d Cir. 2024) ("A witness does not perjure himself merely by giving incorrect, confusing, or mistaken testimony."); *United States v. Khamrokulov,* No. 22-3153, 2024 WL 2207056, at *2 (2d Cir. May 16, 2024), *cert. denied sub nom. Narzikulov v. United States*, No. 24-5778, 2024 WL 4805962 (U.S. Nov. 18, 2024) ("[T]he inconsistent recollections of the two witnesses as to Juraev's presence in the front passenger seat provide no basis for Rule 33 relief. Indeed, Narzikulov failed to establish before the district court that this and other alleged inconsistencies reflected perjury, rather than 'confusion, mistake, or faulty memory.'" (quoting *Monteleone*, 257 F.3d at 219)).

Moreover, as discussed above, any inconsistencies between Mr. Dangerfield's testimony and the recording played at trial are for the jury to resolve, and do not present an "exceptional circumstance" warranting the Court's reversal of the jury's credibility determination. *Ferguson*, 246 F.3d at 133–34 ("It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992)).

Accordingly, the Court denies Mr. Wright's motion for a new trial.

---

[4] While the Court need not reach this issue, Mr. Wright must also show as a threshold matter that "the falsehoods were not known to him at the time of trial." *Aquart*, 912 F.3d at 20. While his counsel argues that he "did not hear/ and/or does not recall the above testimony by Kyran Dangerfield immediately before Gvt. Exhibit 1149 was played for the jury," Second Mot. for New Trial at 1 n.1, his counsel had the opportunity to discover that Mr. Dangerfield's testimony was inconsistent with the recording as the recording was played after Mr. Dangerfield's testimony in open Court at his trial.

**IV.    CONCLUSION**

For the foregoing reasons, Mr. Wright's motion for reconsideration and his motion for a

new trial are **DENIED**.


        **SO ORDERED** at New Haven, Connecticut, this 28th day of February, 2025.

                              /s/ Victor A. Bolden
                              VICTOR A. BOLDEN
                              UNITED STATES DISTRICT JUDGE